My name is Francisco Leone and I represent the Juvenile Male in this matter. The juvenile in this matter has served 20 months in custody while on probation as a condition of duty for an offense which under the guidelines, and conceitedly the guidelines only cover juveniles in order to determine the maximum possible sentence. But even under that, the maximum possible sentence would have been only six months. And in addition to the fact that he served more than 20 months almost in custody, he was taken from Arizona and sent to a facility, a juvenile facility up in Montana, where we've gotten information that he's successfully completed that program, but he may not be back in Arizona probably for several more weeks. We contend that that's an abuse of discretion to have sentenced or disposed of this juvenile matter in that fashion because you have a situation where a juvenile is actually serving three times, more than three times, what he should have served had this matter been disposed of by official detention to begin with. And I guess this is a treatment facility. The Montana facility. Yeah. Is there another treatment facility closer by that would offer a similar program? The facility that we mentioned or suggested to the Court was one in Florence, which was about 60 miles north of Tucson. And it was a facility where the we're In Florence. In Florence. Yeah. Where the juvenile had been detained predisposition and was doing pretty well because it is a juvenile detention facility. Correct. It's not a treatment facility, is it? It is not a treatment facility. That's true. But he was getting some – there was outside counselors that were coming in and giving him counseling and medication as well. In fact, at the disposition hearing, he mentioned that he had been taking three different types of medication. We had gotten some reports from that detention facility that he was doing very well. He had gotten his GED. And what we suggested to the Court at the disposition hearing was that because he had served so much time already predisposition, that the Court should allow him to continue that kind of treatment on an outpatient basis or if she was inclined to impose custodial detention, that she should do it up in Florence rather than send him over 1,000 miles away. But she opted – Go ahead. She opted for not detention but for treatment. So how can you say it was abuse of discretion for the district court to look at all of the evidence, all of the facts, including the fact that he had run away from the to correct some of the issues that he had long-term instead of detention? How could that be an abuse of discretion? The reason we contend it's an abuse of discretion is because I think in order to even get to that point is you have to determine what is the normal detention period for this type of an offense. And RLC says that ordinarily you can't treat a juvenile any worse than you would treat an adult. And under the guidelines, the uppermost range would have been six months. But we're not talking detention. We're talking treatment. Those are two different things. It is two different things, but I think it's a distinction in probably degree more than actual substance because the recommendation was made by a psychiatrist and by the probation office that he be sent to a secure detention facility. And I don't think it's a danger. That's one of the reports, yes. Yeah. You know, I just, I have a, do you really want an opinion here that says that the district court must send a juvenile who's in deep trouble, constitutes a danger, must send him to a locked-down detention facility? And it can't send him to a facility that offers rehabilitation and treatment? No. But it seems to me that for the juvenile, granted, the treatment facility is ideal, but we had a facility there near Tucson. The Florence facility was one where he was doing very well at. Granted, it's a detention facility, but he was getting counseling. He was getting the drug counseling and some medication, and it was close to his home. And that's one of the things that the Federal Juvenile Delinquency Act suggests that the Court keep in mind. Instead of sending somebody so far away, in this instance, over a thousand miles away, where his family couldn't even visit him. I will tell the Court that in the year that he's been up there, where he still is, his family has not been able to visit him at all. I mean, the most they can do is call him by telephone or he can call them. The district court weighed all of that. That weighed heavily on the district court. But the ultimate determination is what is best for the juvenile. And her, you know, discretion, based on the psychological reports that she received, she ‑‑ I think she made a conscientious decision that this was the best for the juvenile at that time, long term. And detention was not the better course for him because it had not proven to be. Yes. It was never tried. And, no, I'm not trying to suggest that the first option ought to be detention. What I'm suggesting is that because of the way that this ultimately came out, we have a juvenile who has been in detention over three times, what he should have been in detention for. And, yes, he's getting treatment, but there was at least the possibility of either doing it outpatient or doing it in Florence for a more limited period. Here we have a range, actually, of 12 to 18 months because of ‑‑ How old was he? He was, at the time of the offense, he was 14. He was going to turn 17 when he was sentenced. He was four months away from his 17th birthday. He's turned 17 since. He'll be 18 this April. Okay. So for the last three and a half ‑‑ What would be the ‑‑ what would be the sentence for carrying a firearm to school? For a similarly situated adult, it would have been zero to six months is the guideline range. And that's what RLC, the Supreme Court, says suggests is the uppermost limit for that kind of a detention ‑‑ for that kind of an offense given his criminal history. I'm surprised that that's all. The sentence is carrying a firearm to school. That is surprising. That is surprising, but that is what the guideline calculation is. Well, what we have here is a doctor saying that this fellow, this young man is in such problems that if he fails to make progress by his 18th birthday, he should be evaluated for civil commitment. You know, this is ‑‑ okay. I'm not arguing that he doesn't have problems. In fact, I mentioned that to the judge. My suggestion to the judge was that rather than take the drastic step of what was so far away, why not try something a little bit closer. And she made a judgment call. She did make a judgment call. And I understand the Court's review. And, counsel, she could actually have authorized confinement until he was 21 under the Juvenile Delinquency Act, right? She could have. But in order to do that, I think she would have had to have found aggravating circumstances or departed upward from what the guideline calculation was. And as I say, he was doing very well. In fact, the prosecution at the disposition said it's hard to square the person that you have in front of you today with what is reported in the psychiatric evaluation, which was done several months earlier. Again, why isn't this moot? It isn't moot because technically he has never been sent to any kind of a detention facility. This could happen tomorrow. In fact, he could be sent away for another 12 to 18 months tomorrow. And so our position is that when he was sent there for a limited time, that time has been completed, hasn't it? I haven't received any official notification that it has. I've been told by the probation officer that she's asked for him to be brought back, but he's still in custody up in Montana. And it may be several weeks before he's returned to Arizona. So we're worried all about all of this for a few weeks over? Well, I don't know. It took them a long time. I'll tell the judge when he was the disposition was in January. He wasn't taken up to Montana until sometime in March, I believe. So sometimes it takes several months before they can actually move him. And as I say, one of the things that could happen, too, is when he gets down here, because he'll still be under supervision, the court could again impose 12 to 18 months of additional supervision. And our contention is it's an abuse of discretion where you're, for treatment, holding somebody much longer than you would if they had actually been committed to official custody. That would deal with what the judge might do subsequently. What we're concerned with now is what the judge did on this occasion. And that's over, it looks like to me. Well, the reason it's not moved is the reason I've stated in my opposition to the motion, because it is capable of repetition, and it wouldn't be able to be reviewed. And so I think that's the reason why we're concerned.  And I think that every six months the court could say, well, I'm going to put you up for another six months, and we'd never get a chance to have this issue evaluated of whether or not the court can, without calling it official detention, just continue to send this young man to secure facilities.  And I think that's the reason why we're concerned. Thank you. We've helped you more than use your time. Mr. Ferg. May it please the Court, my name is Bruce Ferg, Assistant United States Attorney on behalf of the government in this case. I would submit to the Court that the fact that this case is, in fact, moot. I would submit to the Court that there has been no objection in the appeal to the basic order, which was this young man should go into probation. So there's no question that he must continue under probation. That's not being attacked on appeal. The only thing that was challenged was the directive, this particular condition, that he serve this period of time in Montana until the probation officer and the program personnel agreed that he had successfully completed the program. Well, if he violates his probation, can he be sent back? I would suggest yes. And I would also suggest that this is not the kind of case of possible repetition but evading review, which has been found to be a problem, because we're not talking about a generalized policy or practice of the government, which is what occurred in Brandau and those other cases that were cited in the defendant's response to my motion. What we're talking about is an individualized, very discretionary decision. I understand. My question was going to mootness, however. If he violates his probation, the district court could send him back to Montana. And if we were to reach the merits, I mean, I'm being devil's advocate for your adversary here, but if we were to reach the merits and say that he could not have been held for more than six months and should have permitted it to be done in Florence, that couldn't happen. The bottom line is that 5037, the juvenile statute, lays out four different options about what a judge can do in disposing of a case, and it specifically distinguishes between probation and detention. And that's critical because, as has already been noted, that's what Judge Jorgensen did in this case. She said, it's in your best interest, young man, despite the progress you've made over the last couple of months, if we're really going to protect you and rehabilitate you as well as protect the community, you need more than that. And the only program that offers that is the one in Montana. She lamented there's nothing here in Tucson or Phoenix or close by that offers the range of activities. And that was what Dr. Menendez's report pointed out. I would note the expert that was specifically requested by the defense as an expert in Native American youth, that this young man has not just drug problems. But you're arguing the merits. Right. Yeah. So, again, bottom line is, we're talking about not detention as legally understood, but being placed in a circumstance for rehabilitative services. And the cases I discussed in my answering brief, particularly the Supreme Court case in Reno v. Corre, makes the point that unless the person is under the authority of the Bureau of Prisons, it's not considered detention for purposes of the Federal statute. That's his point. His point is the district court should not have put him into treatment for a longer period of time than he would have been detained if there had been a disposition. So what's your response to that argument? That argument would basically gut the entire process of juvenile rehabilitation. Because for whatever reasons, as we've said, the guideline range is only up to six months for an adult doing something like this. I have no explanation for that, but that's where it is. But we already have seen that he was, to some degree, placed on probation by the tribe, by the feds, other people, for periods of time, including detention, and nothing was working. And so to say, well, too bad, as Judge Jorgensen said, well, I'm just going to throw you back on the community and cut you off at the knees and hope you do okay, that's not what Congress had in mind. They recognized that real rehabilitation may take a significant period of time, particularly when you have someone as disturbed in multiple different ways as this young man is. So now where are we in the process? According to my conversation with the probation officer, I specifically asked the question, has he, in fact, to your satisfaction and the program personnel's satisfaction, completed the program? And she said yes. But has that been communicated to the court? No. My understanding is, well, I can't say that. I have had these conversations with her at the last minute because I thought that we could avoid having to do this argument. But what she represented to me was that there is no final report done by the program until she sends them the paperwork agreeing to his release, which she is in the process of doing. And I guess it's kind of like a discharge summary where they will lay everything out and that will be then presented to the court. So until the court has accepted the probation officer's report and acted on it, it's not moved because we still have the young man under the condition to complete this program. Not necessarily, because as I understood the wording of the condition, it was you will remain in this program until the PO and the program agree that you have successfully completed it. But we know the probation officer is not the final arbiter of whether or not the disposition has been successfully implemented. The probation officer cannot do that. The court cannot delegate to the probation officer the ultimate responsibility to determine whether or not the disposition, the conditions have been satisfied. Well, those kinds of conditions, I believe that they can. That was addressed in the latter part of my brief, particularly the Stevens case, Reardon and so forth, saying that the basic requirement, you must go in as a condition, that is something obviously that the court has to do. But the termination of that or the extent of time that needs to be spent is similar to drug rehab program and so forth. This Court has said, yes, that's exactly the kind of thing. But the court has to ultimately agree. The court has to ultimately say you are released from this condition. The probation officer can come in and say I'm satisfied that he has fulfilled the condition, but the court still has to say I'm satisfied that you're satisfied. So that hasn't happened in this case. No, it hasn't. So, again, our position is that it's essentially moot. We can present your paperwork to that effect within a couple of weeks if, you know, that would make a difference. Do you want any further discussion about the merits? I think we understand your position. Are there any further questions? I just want to know, once this goes to the court, and if the court accepts the probation officer's representation that the program has been successfully completed, what happens after that? The probation officer indicated to me that her intention was to bring the young man back to the New Beginnings program in Tucson, which, again, is the kind of halfway house where he was initially and ran away from. So I guess it would be a kind of a reentry situation. His home is out on the reservation southwest of Tucson. So there does need to be a certain decompression, I guess you could say, or adjustment. It's not over. The total period of probation was the maximum, 60 months, which would run until about August or September of 2013. So he definitely is still under supervision. There's no question about that. Right. Okay. Thank you. Thank you. The case just argued is submitted for decision. We'll hear, unless there are any further questions of the appellate's counsel, are there any further questions? No.  Thank you. The case just argued is submitted for decision.
judges: Hug, Schroeder, Rawlinson